*Margin note: ESSEX. March, 1841. Cushman v. Jordon.*

---

SETH CUSHMAN, Adm'r. of STEPHEN UPSON, JR., *v.* JEREMIAH JORDON.

Where an administrator was appointed more than sixty years after the death of his intestate, and sued in ejectment to recover lands which had descended to the heirs of the intestate, under some of whom the defendant took possession ;—*Held*, that such administrator could not oust the tenant claiming under the heirs, nor be let into possession with them as tenant in common. And, although some or all of the heirs assented to the granting of administration, such assent could have no effect upon the title to the lands so descended.

EJECTMENT, to recover the seizin and possession of lot No. 32, in Wenlock.

On the trial in the county court, the plaintiff read in evidence the charter of Wenlock, dated in 1761, which showed that Stephen Upson, jr., was one of the original grantees, and it was admitted that the lot in question had been set to the right of said Upson.

The plaintiff also gave in evidence his letters of administration, dated November 6, 1832, and introduced testimony to prove that the defendant was in possession at the time when this suit was commenced.

The defendant insisted that the grant of administration to the plaintiff should be treated as a nullity, by reason of the lapse of time since the death of the intestate, which he proved to be rising of sixty years. But it appearing that the administration was recognized and assented to by the heirs of said intestate, the court overruled the objection, and the defendant excepted to the decision.

It appeared that the intestate left two sons and three daughters, his only heirs ; that one of the daughters died unmarried about thirty years since, and that one of the sons died about twenty-five years since, leaving six children who were his heirs, one of whom was Jesse Upson, and the other son of the intestate, Daniel Upson, was still living ; that Esther Upson, one of the daughters of the intestate, married Asahel Brownson, who, with her husband, was still living ; the other daughter was still living or had left legal heirs.

The defendant read in evidence a deed from Daniel Upson, Asahel Brownson and Esther, his wife, to David H. Sumner, dated June 12, 1832, conveying their interest in the land in question, and also a deed from Jesse Upson to Jesse Hughes, dated August 27th, 1832, conveying the said Jesse's interest in the land, and a deed from said Hughes to said Sumner of the same land, dated in November, 1832, and a lease of the land in question from Sumner to the defendant, under which the defendant was in possession when this suit was commenced.

The defendant also attempted to show a title in Sumner to the land; derived from Wm. Hughes, collector of a land tax, granted by the legislature in 1807, and from another source ; but, as the questions which arose upon these branches of the case were not decided in this court, the testimony

relating thereto and the decision and charge of the county court thereon, are omitted in reporting the case.

The jury returned a verdict for the plaintiff to recover an undivided half of the premises, and the suit came to this court on exceptions taken by the defendant.

*E. Paddock* and *O. P. Chandler*, for defendant.

It hardly need be stated that, at common law, on the decease of a person, if his real estate was not otherwise disposed of, by will, it descended immediately to the heirs at law, and an executor or administrator is as much a stranger to it as any other one. The rents and emblements, prior to the decease of the intestate, belong to the administrator; but, after his death, they go to the heir. 1 Sw. 447. So that, upon the death of Stephen Upson, the real estate in question, was cast upon and absolutely vested in his heirs. This was before the state of Vermont had a political existence, and before the revolution. The charter was not granted by this state, and the lands were never held by Stephen Upson, under the authority of this state, and by what rule of law the lands can now be administered as the estate of Setphen Upson, we are at as great a loss to know, as we should be had Stephen Upson, prior to his death, given an absolute deed of them to his children; for then, they would have been no more theirs, in that, than in the present case.

It is stated, in the exceptions, that it appeared that the administration was recognized and assented to, on the part of the heirs.

The bill of exceptions is incorrect in this particular, for there were but a portion of the heirs who had any knowledge on the subject, and certainly those who had not, could not be bound by the administration, if those assenting were. But, suppose they had all given their assent, would it then bring the case within our statute, so that our courts can take cognizance of this suit? We think not. The letters of administration, and every proceeding under them, are void, *ab initio;* for, if the property is that of the heirs, what is it but a fictitious suit, got up to try an abstract question of law? As such, this or the county court have no jurisdiction of it. The jurisdiction of the court cannot be enlarged or restricted by

Essex,
March,
1841.

Cushman
v.
Jordon.

consent of parties, therefore, if the court had not jurisdiction without such consent, they have not with.

Plaintiff, *pro se.*

The county court decided, that, as the heirs recognized and assented to the administration, it was valid.

This decision, we contend, is correct.

The propriety, or legality of the appointment cannot be called in question in this collateral manner.

The supreme court of the United States, in the case of *Griffin* v. *Ferries*, 8 Cranch, 9, say: "In a common case 'of intestacy, letters of administration must be granted to 'some one, and, although they should be granted to one not 'entitled by law, still, the act is binding until annulled and 'set aside by competent authority.'

And in the case of *Childress* v. *Emory*, 8 Wheaton, 642, the same court say : 'A general profert of letters of admin-'istration is sufficient, and if the other party wishes to ob-'ject to them as insufficient, he must crave oyer of them, 'otherwise they cannot be judicially examined.'

If the letters were a nullity, and the plaintiff therefore not administrator, the objection could be taken by plea only. *Childress* v. *Emery*, 8 Wheaton, 642.

But our statute is imperative on this subject.

1st. There is no limitation of time within which adminis-tration shall be taken out.

2d. The appointment of the probate court is conclusive unless appealed from.

3d. All doings of an administrator before, or until the re-peal of his letters of administration, shall be valid to all in-tents and purposes. Comp. Statute, 339, § 32.

4th. This action, in the present condition of the case, can be maintained by *no other* than the administrator. No such action can be maintained by any heir unless his interest be set off to him by an order of the probate court. Comp. Statute, 364, § 63.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The plaintiff sues as administrator of the estate of Stephen Upson, jr., one of the original gran-tees of the town of Wenlock, to recover the possession of lot

No. 32, laid to the right of said Upson. The charter was dated in 1761, and Upson died more than sixty years before the time when this action was tried in the county court, and must have died before Vermont became an independent state. It appears that he left two sons and three daughters. One of his sons and one of his daughters, with her husband, conveyed their interest in the right of their father, on the 12th of June, 1832, to David H. Sumner, who put the defendant in possession. A part of the right of the other son was also conveyed to Sumner about the same time. The letters of administration to the plaintiff, were granted subsequently to this, to wit, in November, 1832, and the plaintiff, by virtue of his letters of administration, recovered a verdict for one undivided moiety of the premises declared for.

It is not necessary for us to say whether a court of law will disregard a letter of administration and declare it void, after so great a lapse of time as passed, in this case, between the death of the intestate and the granting of the letter of administration, or whether, under the statute of 1821, in relation to the settlement of estates, a letter of administration would be necessary where the estate has descended to and been occupied by the heirs. The case of *Hubbard* v. *Ricart*, 3 Vt. R. 207., determined that after a short period of time had elapsed, the claim or lien of the administrator might be presumed to be at an end, as against the heirs. Before the year 1821, the heirs or devisees might, at any time, maintain an action of ejectment to recover lands belonging to their ancestor. The real estate descended to them immediately on the death of the ancestor. The administrator or executor had nothing to do with the real estate, except the power given him by statute, to keep the same in repair, and to sell, under the directions of the probate court, for the payment of debts and legacies. It never was considered or supposed that he could maintain an action of ejectment to dispossess the heirs, or to be let into possession with them.

In the case under consideration, the lot in question had descended to and become vested in the heirs, more than half a century before the granting the letters of administration, and while they, as well as the land, were subject to another government, and could not be devested by any act of the probate court, granting administration.

Essex,
March,
1841.

The assent of any or all the heirs to the granting of administration, could have no effect on the title thus vested in them. More especially could not this assent have any effect, when we find a part of the heirs actually deeding their interest to Sumner, before any attempt was made to take out letters of administration. Sumner, by his tenant, the defendant, Jordon, held the lot in question for himself and the other heirs; as tenant in common with them, and this administrator cannot disturb him in the possession, or evict him therefrom, or any part thereof. As this view of the case is fatal to the plaintiff's title, in any event, it is unnecessary to consider the other titles relied on by the defendant.

The judgment of the county court is reversed.